## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

MAY 1 2 2009

Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Cr. No. **H - 09 - 250** |
| § | |
| LAURA PENDERGEST-HOLT § | |
| a/k/a Laura Pendergest, § | |
| a/k/a Laura Holt, § | |
| § | |
| Defendant. § | |

## INDICTMENT

The Grand Jury Charges:

At all times material to this Indictment:

## COUNT ONE
### Conspiracy to Obstruct SEC Investigation
### (Violation of 18 U.S.C. § 371)

## I.    INTRODUCTION

### Relevant Persons and Entities

1.    Stanford Financial Group (SFG) was the parent entity of Stanford

International Bank, Ltd. (SIBL) and a web of other affiliated financial services

entities, including Stanford Group Company (SGC).  SFG maintained offices in

several locations, including Houston, Texas, Memphis, Tennessee, and Miami,

Florida.

2.    SIBL was a private, offshore bank with offices on the island of Antigua and elsewhere.  SIBL was organized in or about 1985, originally under the name Guardian International Bank, and, in or about 1989, SIBL moved its principal banking location to Antigua.

3.    SGC, a Houston-based corporation, was founded in or about 1995. SGC was registered with the Securities and Exchange Commission (SEC) as a broker-dealer and investment advisor.  SGC was also a member of the Financial Industry Regulatory Agency (FINRA), formerly the National Association of Securities Dealers (NASD), and the U.S. Securities Investor Protection Insurance Corporation (SIPIC).

4.    Defendant **LAURA PENDERGEST-HOLT** was the Chief Investment Officer of SFG and SIBL.  In or about December 2005, **HOLT** was appointed by the SIBL Board of Directors as a member of SIBL's Investment Committee.

### SIBL's Investment Program

5.    Investors and potential investors in SIBL's CD Program received a Disclosure Statement, amended several times over the years, and other offering documents providing information regarding SIBL, including data purportedly

2

depicting SIBL's historical portfolio performance by specific categories of
investment.

6.     By the end of 2002, SIBL claimed in its Annual Report a growth in
total assets from 2001 to $1.7 billion, up 43.1%, with a "record operating profit"
up 97.9% to $23.7 million.  In its Annual Reports from 2002 through 2007, SIBL
reported consecutive yearly growth rates of 29% to 32%, increasing by year end
2007 to a purported $7.1 billion in total assets with a "record operating profit" of
$43.6 million.  In its December 2008 Monthly Report, SIBL purported to have
over 30,000 clients from 131 countries representing $8.5 billion in assets.

7.     SIBL internally segregated its investment portfolio into three
investment tiers: (a) cash and cash equivalents ("Tier I"); (b) investments with
"outside portfolio managers" ("Tier II"); and (c) other assets ("Tier III").
Investors were not advised that SIBL segregated its investment portfolio into these
three tiers.

8.     According to internal SIBL documents, as of June 30, 2008, Tier I
investments represented about 9% of the purported total value of SIBL's
investments; Tier II investments represented about 10% of the purported total
value of SIBL's investments; and Tier III investments represented more than 80%
of the purported total value of SIBL's investments.  Approximately 50% of the

3

purported value of Tier III (approximately $3.2 billion) included investments in artificially valued real estate and approximately 30% of the purported value of Tier III (approximately $1.6 billion) included notes on personal loans to SFG Executive A.

9.      SFG Executive A and SFG Executive B exercised control over the Tier III investments. Nevertheless, at least as early as approximately November 2008, **HOLT** was aware of and had discussed with other SFG employees the current value of Tier III and the real estate holdings in Tier III.

### SEC Investigation

10.    In or about 2005, the SEC initiated an investigation of SFG.

11.    In or about December 2008, as part of an ongoing investigation, the SEC made official inquiries of SFG regarding the value and content of SIBL's purported investments.

12.    On or about December 23, 2008, an SEC staff attorney notified an outside attorney for SFG (Attorney A) that the SEC intended to schedule testimony of witnesses concerning SFG and related entities.

13.    In or about January 2009, the SEC issued subpoenas to **HOLT**, SFG Executive A, and SFG Executive B for testimony and documents.

14.     On or about February 10, 2009, **HOLT** attended an SEC proceeding in Fort Worth, Texas, and provided sworn testimony to the SEC regarding SIBL's investment portfolio.

15.     On or about February 16, 2009, the SEC filed a Complaint seeking emergency relief against SFG and its related entities in the United States District Court for the Northern District of Texas ("the District Court"), alleging fraud.  In its Amended Complaint, filed February 27, 2009, the SEC further alleged misappropriation of billions of dollars of investor funds and other fraudulent conduct.

16.     On or about February 17, 2009, the District Court appointed an individual, known as a Receiver, to take over SFG and its related entities to protect and preserve the investments and assets.

## II.   THE CONSPIRACY

17.     From in or around January 21, 2009, through in or around February 17, 2009, in the Southern District of Texas and elsewhere, the defendant,

**LAURA PENDERGEST-HOLT**
**a/k/a Laura Pendergest,**
**a/k/a Laura Holt,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and

unknown to the Grand Jury, to commit the following offense against the United

States: to corruptly influence, obstruct and impede and endeavor to influence,

obstruct and impede, in whole or in part, a pending proceeding  before any

department and agency of the United States of America, that is, the Securities and

Exchange Commission (SEC), in violation of 18 U.S.C. § 1505.

## PURPOSE OF THE CONSPIRACY

18.    It was a purpose of the conspiracy that the defendant and her

conspirators  would corruptly influence, obstruct and impede regulators in order to

perpetuate and prevent detection of an ongoing fraud involving SFG and SIBL by

impeding the SEC's scrutiny of SFG and SIBL, including the SEC's efforts to

ascertain SIBL's true financial condition and the content and value of SIBL's

investment portfolio, in the effort to, among other things, continue receiving

economic benefits from the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and her conspirators sought

to accomplish the objects and purpose of the conspiracy, included, among other

things, the following:

19.    **HOLT** and others would send communications and hold meetings in

which they would discuss ways to conceal from the SEC the true operations and

6

financial condition of SIBL and to forestall the SEC investigation, including preventing full disclosure of the nature and value of SIBL's holdings.

20.    **HOLT**, Attorney A and others would make false and misleading statements to SEC staff attorneys in order to persuade them to delay the sworn testimony of SFG Executives A and B by falsely representing that **HOLT** and the President of SIBL would be better witnesses, with more specific and direct knowledge, regarding the details of SIBL's entire investment portfolio than would SFG Executives A and B.

21.    **HOLT** would attend an SEC proceeding at which **HOLT** would provide false sworn testimony regarding SIBL's investment portfolio, her knowledge of the portfolio, including Tier III investments, her preparatory meetings in Miami, Florida, and those persons with whom she met in Miami in preparation for her testimony.

## OVERT ACTS

In furtherance of the conspiracy and to achieve its objects and purpose, at least one of the conspirators committed and caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

7

22.     On or about January 21, 2009, at a meeting in Miami, Florida,

**HOLT**, the SFG Executive A (by telephone), Attorney A, SFG Executive B, and

others, discussed how to respond to the SEC subpoenas.

23.     On or about January 23, 2009, at a meeting between Attorney A and

an SEC Staff Attorney at SFG's offices in Houston, Texas, Attorney A (a)

requested that the SEC Staff Attorney defer the SEC subpoenas to SFG Executives

A and B  and (b)  represented that **HOLT** and the President of SIBL would be

better witnesses than SFG Executives A and B, whom Attorney A claimed were

executive level officers not involved in the "nuts and bolts" of business operations

and could not tell the SEC attorneys about details of SIBL's assets.

24.     On or about January 27, 2009, Attorney A received an email from a

representative from the SEC which confirmed the SEC's agreement to modify the

schedule for sworn testimony in the SEC investigation and the SEC's expectation

that the SIBL President and **HOLT** would provide "credible and verifiable

testimony regarding all of the assets" of SIBL.

25.     On or about January 27, 2009, Attorney A sent an email to **HOLT**

and SIBL's President, with a copy to SFG Executive B and others, regarding the

need to address with the SEC all three tiers of the SIBL portfolio, and further

stating that they needed to "rise to the occasion" and that "our livelihood depends on it."

26.     On or about February 4, 2009, at a meeting in Miami, Florida, which SFG Executive B and others attended, **HOLT** suggested that she only disclose in her testimony to the SEC the June 30, 2008, SFG financials as those numbers "looked better."

27.   On or about February 4, 2009, in Miami, Florida, **HOLT** participated in the preparation of a PowerPoint document meant to reflect the entire portfolio of assets in Tier III.  The pie chart showed that Tier III contained over $3 billion in real estate and $1.6 billion labeled as "Loan to Shareholder."

28.     On or about February 4, 2009, in Miami, Florida, SFG Executive B assisted **HOLT** in preparing the pie chart concerning Tier III by, among other things, providing **HOLT** with a thumb drive from which **HOLT** appeared to obtain information for the chart.

29.     On or about February 10, 2009, prior to **HOLT**'s testimony before the SEC, SFG Executive B contacted **HOLT** by telephone and reminded her to only discuss Tier II of SIBL's portfolio.

30.     On or about February 10, 2009, in ForthWorth, Texas, **HOLT** provided sworn testimony at an SEC proceeding in which she: (a) failed to

disclose her preparation meetings in Miami, Florida, approximately one week before her testimony, despite having been asked about her testimony preparation; and (b) falsely represented that she did not know what assets were in Tier III and did not know what allocations were in Tier III.

31.     On or about February 12, 2009, **HOLT** caused funds in the amount of approximately $4.3 million to be sent by wire transfer from Bank of New York to SIBL's operating account at Bank of Houston in Houston, Texas.

32.     On or about February 17, 2009, at a meeting with SEC staff attorneys in Memphis, Tennessee, **HOLT** falsely represented to the SEC Staff Attorneys that if she "knew anything about Tier III," she would tell them.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
### Obstruction of SEC Investigation
### (Violation of 18 U.S.C. §§ 1505 and 2)

33.     Paragraphs 1 through 16 and 19 through 32 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

34.     From in or around January 21, 2009, through in or around February 17, 2009, in the Southern District of Texas and elsewhere, the defendant,

**LAURA PENDERGEST-HOLT**
**a/k/a Laura Pendergest**
**a/k/a Laura Holt,**

aided and abetted by others, known and unknown to the Grand Jury, did corruptly

influence, obstruct and impede, and endeavor to influence, obstruct and impede, in

whole or in part, a pending proceeding before any department and agency of the

United States of America, that is, the Securities and Exchange Commission

(SEC).

In violation of 18 U.S.C. §§ 1505 and 2.

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE

TIM JOHNSON
Acting United States Attorney

By: _____
GREGG COSTA
Assistant United States Attorney

STEVEN A. TYRRELL
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

By: _____
PAUL E. PELLETIER
Principal Deputy Chief, Fraud Section,
Criminal Division, U.S. Department of Justice

11